**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MIN HUANG, QIONG DAI, and JIAYIN DONG<br><br>*Plaintiffs*,<br><br>v.<br><br>KEN PAXTON, Attorney General of Texas, in his Official Capacity,<br><br>*Defendant*. | CIVIL ACTION NO. 1:25-cv-01509-ADA |

### DEFENDANT'S MOTION TO DISMISS

Defendant, KEN PAXTON, in his official capacity as Attorney General of the State of Texas, respectfully requests that the Court dismiss the claims brought against him by Plaintiffs, Min Huang, Qiong Dai, and Jiayin Dong (Plaintiffs). All of the plaintiffs lack standing because they have not shown a credible threat of enforcement and they haven't established traceability. In addition, all of their claims are barred by sovereign immunity. In addition, two of the plaintiffs (Min Huang and Qiong Dai) do not have any right to bring these claims and one plaintiff (Jiayin Dong) has failed to show he is impacted by the challenged statute. The Court should therefore dismiss all claims against Defendant pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### NATURE AND STAGE OF PROCEEDING

Plaintiffs in this case challenge a Texas law that protects Texas and its residents by restricting the totalitarian governments of certain designated countries—China, Russia, Iran, and North Korea—from purchasing land in Texas. *See* Tex. S.B.17, 89th Leg., R.S. (2025); *see* App. 1. To prevent circumvention of the restriction, SB 17 also prohibits land purchases by people domiciled in those nations, excluding U.S. citizens and lawful permanent residents of the U.S. (LPRs).

1

**STATEMENT OF FACTS NECESSARY FOR RESOLUTION**

Two of the plaintiffs are foreign nationals not residing within the boundaries of the U.S. One plaintiff is a foreign national legally residing in Waco, Texas on a student visa. All Plaintiffs challenge SB 17 as preempted by federal law and a violation of their rights to equal protection contained in the Fourteenth Amendment. However, the two foreign plaintiffs do not have the right to bring these claims and the third plaintiff is not adversely affected by the law. None of the plaintiffs have standing to bring these claims and have not shown a credible threat of enforcement nor have they even pled traceability. Sovereign Immunity protects defendant from this suit. SB 17 is well within the state's traditional sovereign authority to regulate the acquisition of its own land, and the state has done so in clear terms not based on race or national origin. SB 17 mitigates the influence of hostile foreign governments. The statute draws lines on that basis, not based on race or national origin. Nothing the federal government has done—including through the limited regulatory authority and scarce resources afforded to the Committee on Foreign Investment in the United States (CFIUS)—precludes Texas from exercising core sovereign authority over its own land.

**STANDARD OF REVIEW**

"The district court must dismiss the action if it finds that it lacks subject matter jurisdiction." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Sebelius*, 635 F.3d at 762.

A count should be dismissed when it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint, the main objective is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." *Lone Star Fund V (US), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a claim to be plausible on its face, the plaintiff must sufficiently

plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, plaintiff's legal conclusions need not be accepted as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

## ARGUMENT
### DISMISSAL IS PROPER FOR LACK OF JURISDICTION

This case has three individual plaintiffs. The Complaint states that Plaintiffs live in Texas, but in fact only one does. Pages 8-9. Plaintiff Min Huang is a Chinese citizen residing in Shanghai. Plaintiff Qiong Dai is a Chinese citizen residing in New Zealand and Jiayin Dong is a Chinese citizen residing in Waco, Texas. Declaration of Jiayin Dong. None of the plaintiffs have standing because they have not shown any credible threat of enforceability nor have they pled traceability. The third plaintiff has not shown that he is adversely affected by the statute. Therefore dismissal is proper for a lack of jurisdiction.

**Plaintiffs face no credible threat of enforcement.**

"When challenging a prior to its enforcement, a plaintiff satisfies the injury in fact requirement where he alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). To establish an Article III injury in the pre-enforcement context, plaintiffs must also show that "the threat of future enforcement of the challenged policies is substantial." *Nat'l Press*, 90 F.4th at 782 (cleaned up). Plaintiffs' analysis on that point applies the wrong standard.

Plaintiffs contend that enforcement of the law is "pending" and that in "implementing and enforcing" the law Defendant is harming them. Complaint Paragraphs 90 and 91 on page 21. They

repeat similar allegations in paragraphs 104, 105, and 118.  These allegations assume that enforcement is happening but do not allege any actual evidence to that effect.

They seem to believe that the court may assume a credible threat of prosecution in the absence of compelling contrary evidence.  But that standard applies only to First Amendment cases. "Unlike in other constitutional contexts, in the speech context, we may *assume* a substantial threat of future enforcement absent compelling contrary evidence." *Nat'l Press*, 90 F.4th at 782. Sometimes, plaintiffs "argue that we must presume a credible threat of prosecution because this is a pre-enforcement challenge. They are mistaken. The presumption Plaintiffs rely on applies to pre-enforcement challenges to recently enacted . . . statutes that facially restrict expressive activity by the class to which plaintiff belongs." *Texas State LULAC v. Elfant*, 52 F.4th 248, 257 (5th Cir. 2022). And though Dong suggests the Court assumed a credible threat of enforcement in the non-First Amendment case of *Texas v. Yellen*, he is mistaken.  *see* 105 F.4th 755, 765 (5th Cir. 2024).

Thus, in *National Press* the Court emphasized this distinction to explain why the plaintiffs in that case could challenge the statute at issue on First Amendment grounds but not due process grounds. 90 F.4th at 782-83. Because the First Amendment context permitted the Court to assume a substantial threat of future enforcement, the Court found an Article III injury on that ground. *Id*. By contrast, the plaintiffs failed to establish an injury to bring their due process claim against the same statute because they had "never been arrested or prosecuted for violating" that statute, and "the available evidence suggests that Defendants have never enforced [the statute] against Plaintiffs (or anybody else)." *Id*. at 782. Thus, whether the statute violated the Due Process Clause was "a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Id*.

Relatedly, in a recent case, the Court provided important examples of when a credible threat of prosecution exists and when it does not. In that case, the plaintiffs challenged various provisions of a Texas statute regulating voting. *La Union Del Pueblo Entero v. Abbott,* 151 F.4th 273, 282 (5th Cir. 2025).  Relevant here, the Court noted that the mere fact that a statute "directly regulate[s]" a plaintiff "does not ipso facto establish injury." *Id.* at 287. The Court held that the

plaintiffs in that case had standing to challenge some parts of the voting laws but not others. The plaintiffs had standing to challenge a provision of the statute because they engaged in activities covered by that provision and "a state witness testified that he would be concerned those activities constitute voter fraud." *Id.* at 290. That testimony "distinguishes these plaintiffs' concrete fears of prosecution under [the relevant statutory provision] from the speculative fears of prosecution under" different provisions such that a credible threat of enforcement existed for the former provisions but not the latter**.** *Id.*

Thus, *National Press* and *Pueblo Entero* show that, whatever else may be true, when a government official has taken no steps to enforce a statute, then no credible threat of enforcement exists. *National Press* held that when a government official had taken no steps to enforce the relevant statute against the plaintiffs or anyone else, no credible threat of prosecution existed. And *Pueblo Entero* held that a credible threat existed when state witnesses testified that the State was concerned that the plaintiffs' activities were illegal, in contrast to provisions about which the State had said nothing.

Here, plaintiffs have pleaded no facts showing that the Attorney General has taken any steps to enforce SB 17, most specifically the domicile provision or the third-party domicile provision, against them or anyone else. In a previous suit challenging SB 17 on identical grounds with a different set of plaintiffs, the district court specifically found that the Attorney General had no intention of enforcing the statute against persons similarly situated to Dong. *Wang v. Paxton*, 2025 WL 2402324 at page 9 (S.D. Tex 2025).

**Plaintiffs have not established traceability**

Even though plaintiffs ask this Court to issue an injunction, and provisionally certify a class, they do not argue that they have met standing's traceability requirement. That is a separate standing requirement independent of the above-discussed test to establish a pre-enforcement injury.

In *A&R Engineering*, a plaintiff sued the Texas Attorney General and alleged that

a Texas statute violated the First Amendment because it required certain state contractors to certify that they did not boycott the State of Israel. *A&R Eng'g & Testing, Inc. v. Scott*, 72 F.4th 685, 687 (5th Cir. 2023). The court ruled that although the plaintiff had established an economic injury, it could not trace that injury to the Attorney General. *Id*. at 690. The Court explained that "traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *Id*. The Court then held that the plaintiff had not established traceability because "the Attorney General hasn't taken any action to suggest he *might* enforce the provision even if he has such power. Plaintiffs must assert an injury that is the result of a statute's actual or threatened *enforcement*." *Id*. (emphases in original). "And where the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed us to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities,' that cannot trace an injury to the government." *Id*. (quoting *Clapper*, 568 U.S. at 410). And in that vein, *Clapper* held that it is the plaintiff's burden to establish standing by pointing to specific facts regarding future enforcement actions, "not the Government's burden to disprove standing by revealing details of its . . . priorities." *Clapper*, 568 U.S. at 412 n.4.

It is the Plaintiff's burden to plead facts showing actual or threatened enforcement. Because Plaintiffs have pleaded none of those things, they have not established traceability. That is particularly so because they have pleaded no facts showing that the Attorney General intends to enforce SB 17 against them specifically. For all of these reasons, Plaintiffs have not established standing.

**SB 17 does not apply to Dong.**

In addition to the reasons given above, plaintiff Jiayin Dong lacks standing because SB 17 does not apply to him. SB 17 applies to five categories of individuals: (1) those "domiciled in a designated country;" (2) citizens of designated countries who are domiciled outside the United States in a third country in which they are not citizens; (3) citizens of designated countries unlawfully present in the United States; (4) non-U.S. citizens acting as agents of a designated

country; and (5) members of the ruling political party in a designated country. Tex. Prop. Code § 5.253(4)(A)-(E).   Of these five categories, Dong contends only that he meets the first. The challenged law defines domiciled as "having established a place as an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." Tex. Prop. Code § 2.251(4).

Jiayin Dong is lawfully present with a student visa. Declaration of Jiayin Dong. He has lived in Waco since 2024 and plans to stay in the Waco area at least until graduation in May 2028. He says in his declaration that he is undecided about where he intends to live following graduation. This lack of certainty regarding his future is an admission that he has changed his mind since he completed his application for a student visa which requires an averment of intention to leave the United States  upon graduation.  In the current procedural posture, the court must accept his uncertainty as true and the only way he could be uncertain now is if he has changed his mind since filling out the visa application.

The definition of "domiciled" in SB 17 contains objective components ("established a place" as a person's home) as well as subjective components (intent to return when absent) when defining domicile. Tex. Prop. Code § 5.251(4). Mr. Dong has not proven he is domiciled anywhere, but most importantly, he has not produced evidence that he is domiciled in China or anywhere else outside of the U.S.  Thus, the provisions of the challenged law do not apply to him for two alternative reasons. Tex. Prop. Code § 2.253(4).  First, Dong is not domiciled in China even if he is not domiciled in the U.S. because SB 17 does not require that one must be domiciled somewhere at all times.  Second, alternatively, Dong is domiciled in the U.S. for purposes of SB 17.

**1. Dong has not pleaded that he is domiciled in China.**

Dong's analysis proceeds from the wrong premise. The question is not whether Dong is domiciled in the United States but rather whether he is domiciled in China. That is because SB 17 applies to individuals who are "domiciled in a designated country" like China; it does not apply to everyone except individuals domiciled in the United States. Tex. Prop. Code § 5.253(4)(A).

Dong has not pleaded facts to show that he is domiciled in China. Rather, Dong assumes that he must be domiciled in China because he is a Chinese citizen and does not believe that he is domiciled in the United States.  See Motion for Preliminary Injunction page 6 where plaintiffs allege Dong lacks the necessary subjective intent to be domiciled in Texas, but doesn't otherwise assert a domicile. But that is a non sequitur.

Even if Dong is not domiciled in the United States, it does not follow that he must be domiciled in China. Dong's argument depends on the premise that he has not lost his previous domicile until he has acquired a new one. It is true that some old Texas Supreme Court decisions have articulated that principle while interpreting the common law or different statutes. *See Cross v. Everts*, 28 Tex. 523, 533 (Tex. 1866); *Peacock v. Bradshaw*, 194 S.W.2d 551, 555 (Tex. 1946) (A "domicile which has once attached is retained until a new domicile is attained."). But those cases were decided long before SB 17, and there is no support for such a proposition in the language of SB 17.

"When construing statutes, or anything else, one cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases." *In re Off. of the Att'y Gen. of Tex.*, 456 S.W.3d 153, 155 (Tex. 2015). Most relevant here, the "canon of statutory construction known as *noscitur a sociis*—'it is known by its associates'— holds that the meaning of a word or phrase, especially one in a list, should be known by the words immediately surrounding it." *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 61 (Tex. 2015). The Texas Supreme Court relies "on this principle to avoid ascribing to one word a meaning so broad that it is incommensurate with the statutory context." *Id*.

Applying that canon of construction, especially in combination with the statute's plain language, the term "domicile" as used in SB 17 does not require an individual to acquire a new domicile in the United States in order to abandon a previous domicile in a designated country like China. Every provision on the list of individuals prohibited from purchasing real property in Texas

references those with specific connections to designated countries. That includes citizens of designated countries domiciled outside the United States in a third country who are not citizens of the third country, citizens of designated countries unlawfully present in the United States, non-U.S. citizens acting as agents of designated countries, and members of the ruling political party of a designated country. Tex. Prop. Code § 5.253(4)(B)-(E). Because all four of those categories of individuals reference those with a specific type of affirmative connection to designated countries, it makes sense that the only other category, those domiciled in a designated country, should also apply only to those who are still connected to a designated country. Thus, if an individual no longer resides in China and has no intent to return there, then he is not "domiciled in a designated country" for purposes of SB 17, even if he is not domiciled in the United States or is domiciled nowhere within the meaning of SB 17. *Id.* § 5.253(4)(A).

Such an interpretation makes sense in light of SB 17's stated purposes. The Legislature included a detailed list of findings, all of which focus on the adverse activities of the designated countries. For example, China "will continue to expand its coercive, subversive, and malignant influence activities to weaken the United States," Russia "intentionally stokes political discord in the West," Iran has "previously tried to conduct lethal operations in the United States," and North Korea "continues to pursue military capabilities that threaten the United States." SB 17 Section 1. That all of the Legislature's findings focus on the malignant actions of the designated countries suggests that if an individual abandons the types of ties to that country that the statute prohibits, then the statute does not apply. Thus, if one abandons his residence in China with no intent to return, then he is not domiciled in China, even if he has no other domicile within the meaning of SB 17.

### 2. Dong is domiciled in the United States and Texas.

Though it is not necessary to be domiciled in the United States in order to be exempt from SB 17, Dong is in fact domiciled in the United States and Texas for purposes of SB 17. Dong has lived in Texas since 2024 and intends to remain in Texas through graduation in 2028. Dong declaration. More specifically, he wishes to "continue renting an apartment in Waco to finish [his]

9

degree. He has also stated that is future intentions are unclear.  Without a specific intention to return to China as his permanent home, he is not domiciled in China per the definition in SB 17. Tex. Prop. Code Section 5.251. So he is domiciled in Texas.

**Sovereign Immunity Bars this suit**

"Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir 2024). "The legal fiction of *Ex parte Young*, however, provides an exception." *Id*. "To be a proper defendant under *Ex parte Young*, a state official must have some connection with the enforcement of the law being challenged." *Id*. The Court has articulated three "guideposts" to aid that inquiry.  *Id*. "They are: (1) the state official has more than a general duty to see that the laws of the state are implemented, *i.e.* a particular duty to enforce the statute in question; (2) the state official has a demonstrated willingness to exercise that duty; and (3) the state official, through her conduct, compels or constrains persons to obey the challenged law." *Id*. (cleaned up). Here, the second and third requirements are not met.

**A. Plaintiffs have not pleaded a demonstrated willingness to enforce.**

To have a "demonstrated willingness to enforce the challenged statute," the state official "must have taken some step to enforce the statute." *Id*. at 329. The "bare minimum appears to be some scintilla of affirmative action by the state official." *Id*. Such action may be shown through past enforcement of the statute. *Id*. "If the plaintiffs bring a pre-enforcement action, as has occurred here, prior enforcement obviously will be lacking. Nevertheless, we still require some scintilla of affirmative action by the state official." *Id*. Importantly, "what is sufficient for standing will not necessarily establish an enforcement connection." *Id*. at 330. That is particularly so when courts adjudicate First Amendment pre-enforcement challenges in which they assume a credible threat of enforcement for standing purposes in the absence of contrary evidence. *See id*. at 329-30. Thus, the Court has rejected that standard in the sovereign immunity context. *Id*. at 330; *see Nat'l Press*, 90 F.4th at 786.

There is no material distinction between the facts of this case and *Ogg* and *National Press* for "demonstrated willingness" purposes. In *Ogg*, the relevant official had "taken no action with respect to the Texas Election Code provisions challenged by the Plaintiffs." 105 F.4th at 330. She "never enforced the challenged provisions in the past," as the "suit was brought only six days after the governor signed [the new bill] and months before its provisions became effective." *Id*. And though a history of prior enforcement was not required, the plaintiffs could not allege any action taken by the official to show a demonstrated willingness to enforce. *Id*.

Similarly, the plaintiffs in *National Press* failed to establish a demonstrated willingness to enforce because the record showed that the relevant officials had only enforced laws similar to, but different from, the statute being challenged. *Nat'l Press*, 90 F.4th at 786. As to the actual statute at issue, the relevant state officials had never enforced it. *Id*. And so while "a scintilla of enforcement by the relevant state official with respect to the challenged law will do," there was "not even an iota of a scintilla. Zilch." *Id*.

*Ogg* and *National Press* squarely apply here. Plaintiffs have not shown that the Attorney General has taken any action suggesting a demonstrated willingness to enforce SB 17. Plaintiffs' complaint says only that the Attorney General is given "substantial power to investigate and enforce violations of the law, record notices on property, adopt rules for implementation of SB 17, and refer violations to other law enforcement." Complaint paragraph 28. (Plaintiffs repeat this language on page 4 of their Motion for Preliminary Injunction. But that goes only to the first guidepost of *Ex parte Young*. *See Ogg*, 105 F.4th at 325. The relevant official must himself or herself demonstrate a willingness to enforce the statute. *Ogg*, 105 F.4th at 330. Ultimately, Plaintiffs cannot show a demonstrated willingness to enforce on the part of defendant Ken Paxton.

**B. Plaintiffs have not pleaded acts of compulsion or constraint**.

"To determine whether an official has a sufficient connection to the challenged statute, we analyze what enforcement means in the context of that statute." *Ogg*, 105 F.4th at 332. "Panels in this circuit have defined enforcement as typically involving compulsion or constraint." *Id*. If the

11

"official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id*. Here, just as with the "willingness" prong, the complaint and supporting declarations does not reflect any facts showing that the Attorney General has engaged in acts of compulsion or constraint to enforce SB 17.  Importantly, the "existence of the challenged statute" combined with a state official's "authority" to enforce it is "insufficient to demonstrate compulsion or constraint under our *Ex parte Young* precedent." *Id*. The mere fact that the state official "has the authority to enforce" the challenged statute "cannot be said to constrain the party challenging the statute." *Id*. (cleaned up). Nor does the authority to "investigate" violations of a given statute compel or constrain either. *Id*. For these reasons, sovereign immunity bars this suit.

DISMISSAL IS PROPER UNDER RULE 12(B)(6) FOR FAILURE TO STATE A CLAIM

**The Two Foreign Plaintiffs have no Constitutional Rights.**

All of plaintiffs' claims arise under the U.S. Constitution.  The two foreign plaintiffs do not have a substantial enough connection to the U.S. to overcome the black letter law that foreign nationals outside the United States are not protected by the U.S. Constitution and have no ability to assert constitutional rights. *U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990), *Agency for International Development v. Alliance for Open Society International, Inc*, 591 U.S. 430, 433-34 (2020).

Plaintiffs Min Huang and Qiong Dai state unequivocally in their declarations that they are Chinese citizens residing outside of the U.S.  They do not make any claim to be subject to U.S. laws or the U.S. Constitution.  As such, they have no right to bring claims under the U.S. Constitution.  They have no right to claim preemption under the Supremacy Clause and no right to claim equal protection under the 14th Amendment.  These are all the causes of action they have asserted in their complaint and therefore these two plaintiffs should be dismissed from the case.[1]

---

[1] In addition, plaintiff Min Huang in her declaration says that she plans to purchase additional investment properties in Texas, but nothing more specific than a plan to visit a Texas real estate agent in October.  Similarly, plaintiff Qiong Dai says she would like to diversify her assets and was

12

In *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* (*AOSI II*), the Supreme Court held "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." 140 S. Ct. 2082, 2086 (2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 770–771 (2008)). The Supreme Court was adamant, restating its position at least 8 more times in an otherwise brief opinion.

"But the Court has not allowed foreign citizens outside the United States…to assert rights under the U. S. Constitution." *Id.* "As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment." *Id.* at 2087. "In short, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad have no First Amendment rights." *Id.* at 2088. "[Domestic] plaintiffs cannot export their own First Amendment rights to shield foreign organizations from Congress's funding conditions." *Id.* at 2089. "Moreover, plaintiffs' proposed line-drawing among foreign organizations would blur a clear rule of American law: Foreign organizations operating abroad do not possess rights under the U. S. Constitution." *Id.* "[T]he Court did not purport to override the longstanding constitutional law principle that foreign organizations operating abroad do not possess constitutional rights." *Id.* "[B]ecause foreign organizations operating abroad do not possess constitutional rights, those foreign organizations do not have a First Amendment right…." *Id.* "In sum, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad possess no rights under the U. S. Constitution." *Id.*

The two foreign plaintiffs in this case both have expressed a generalized desire to purchase additional properties in Texas in the future. Declarations of Min Huang and Qiong Dai. The courts have held that property ownership in the United States alone without physical presence, residence, or citizenship has not been found to be sufficient to confer the protections of the U.S.

---

planning to purchase a second property in Houston, but now she is concerned that she can't do so. Generalized plans for future purchases are speculative and do not constitute sufficient harm for standing purposes. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)

Constitution to foreign nationals. *U.S. v. Approximately $299.873.70 Seized from a Bank of America Account*, 15 F.4th 1332 (11th Cir. 2021) (Plaintiffs did not have a 5th Amendment due process right to enter U.S. for purposes of attending forfeiture proceeding). *Kadi v. Geithner*, 42 F.Supp.3d 1 (D. D.C. 2012) (Granting MSJ against foreign national asserting constitutional claims.)   In addition, the present suit does not involve whatever rights might exist with regard to their currently owned properties.  It is about their expressed desire to sometime in the future purchase additional properties.  They can assert no constitutional interest in this regard even if they would be entitled to due process protections related to their current holdings.

### THERE IS NO PREEMPTION

Plaintiffs allege that the U.S. Constitution and federal law preempt the regulatory scheme of SB 17. Const. Art. VI. Para. 2. Their preemption argument is in three parts: First that Texas is usurping the federal government's role in foreign affairs, foreign investment and national security; second that SB 17 is preempted by the statutory regime for the Committee on Foreign Investment in the U.S. Foreign Investment Risk Review Modernization Act of 2018 (FIRRMA); and third that SB 17 is preempted by the Fair Housing Act (FHA). 50 U.S.C. 4565, 42 U.S.C. 3601 *et seq*.

Preemption comes in three recognized flavors: express preemption, field preemption and conflict preemption. *Aldridge v. Mississippi Dep't of Corrections*, 990 F.3d 868, 874 (5th Cir. 2021), *Shen v. Simpson*, 687 F.Supp.3d 1219, 1246–47 (N.D. Fla 2023). Plaintiffs allege that SB 17 violates both field and specific conflict preemption. However, they fail to demonstrate that field preemption applies and they do not cite an instance where SB 17 actually clashes with anything in Federal law.

Field and conflict preemption are both forms of implied preemption. *Id*. Field preemption is when Congress has a regulatory scheme in place that leave no room for any other actor to regulate any portion of the field at issue. *Id*.  Conflict preemption occurs when the state law interferes with the congressional regulatory scheme in some way as to prevent it being fully carried out.  *Id*.

"Field preemption of state law is disfavored.*" Nat'l Press Photographers Assoc. v. McCraw*, 90 F.4th 770, 796 (5th Cir. 2024).  In a subject area that has historically been governed by state police

14

powers to protect citizens, an intention to preempt the field by Congress must be shown to be "clear and manifest." *Id.* "Preemption should not be inferred just because the agency's regulations are comprehensive." *Id.*

States have long had the police power to regulate the ownership of its lands. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 242 (1984) *See, e.g.*, *Terrace v. Thompson*, 263 U.S. 197, 219–22 (1923). This regulation is well within Texas' recognized police power. "The quality and allegiance of those who own, occupy and use the farm lands within its borders are matters of highest importance and affect the safety and power of the state itself." *Terrace* at 221.

There is no reason to infer that the congressional statutory schemes in FIRRMA or the Fair Housing Act were intended by Congress to preempt a state's ability to regulate land ownership. There certainly is no "clear or manifest" intent to do so. *Nat'l Press* at 796. Plaintiffs claim that regulation is comprehensive and thereby preempts the state law. But a review of the statutes demonstrate otherwise.

The FIRRMA statutory scheme is not so comprehensive that it occupies the entire field of foreign investment. 50 U.S.C. § 4565. It is primarily related to national defense and it specifically excludes single family dwellings from its purview. 50 U.S.C. § 4565(a)(4)(C). Both statutes can be given effect without any conflict between them. As stated previously, Texas is exercising its police power to insure the domestic security of its residents.

CFIUS is the mechanism that FIRRMA uses to review certain transactions including corporate mergers and acquisitions as well as non single family real estate transactions as long as the real estate being purchased is in "close proximity" to national defense infrastructure of some type. See 50 U.S.C. § 4565(a)(4)(B)(ii)(bb)(AA). FIRRMA makes no attempt to regulate all real property purchases in the U.S. that may be purchased by the government of a designated country or its agents.

For this reason, there is no field preemption of SB 17 by FIRRMA.

In addition, there is no specific conflict between SB 17 and FIRRMA that would make impossible to comply with both laws. Plaintiffs in their complaint spend several pages reviewing

the history of CFIUS culminating in FIRRMA, but nowhere in those pages do they point out any provision of the federal law that SB 17 would supersede or displace. At most, plaintiffs allege that similar concerns about national security motivated both Congress and the Texas legislature. This does not mean the laws conflict in any way and in fact, they do not.

FIRRMA governs much more than real estate transactions including ownership of businesses in the U.S. When it comes to real property, FIRRMA only purports to affect land purchases in "close proximity" sensitive installations. 50 U.S.C. § 4565(a)(4)(B)(ii)(bb)(AA). In addition, FIRRMA specifically exempts from its umbrella any single family dwelling. Texas can review any land purchase anywhere in the state whether it is single family or not. Tex. Prop. Code Section 5.253. There is no showing that any action Texas might take with regard to land purchases under SB 17 will prevent the U.S. government from fulfilling the purposes of CIFIUS and FIRRMA.

For this reason, there is no conflict preemption of SB 17 by FIRRMA.

Likewise, Plaintiffs' claim that SB 17 is preempted by the FHA because Plaintiffs fail to demonstrate discriminatory treatment.

Plaintiffs have failed to demonstrate facial or intentional discrimination based on race or national origin under the FHA for essentially the same reasons they failed to establish an equal-protection claim. *See below.*

The Fair Housing Act prohibits discrimination on the basis of race or national origin in the sale or lease of real estate to be used for housing. However, SB 17 does not discriminate on the basis of race or national origin. As shown below, according to the Chines government, there are almost a million non-Chinese persons residing in mainland China who cannot purchase land in Texas under this statute. Also, according the U.S. Census Bureau, in 2024, there were 5.5 million Chinese persons residing in the United States who are able to purchase or lease real estate in Texas without any impediment from SB 17. Plaintiffs have alleged no specific conflict between SB 17 and the FHA and there is no conflict between SB 17 and the FHA. The FHA does not preempt SB 17.

16

## EQUAL PROTECTION

Plaintiffs allege that SB 17 violates their right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. § 1983. However, SB 17 is neutral on its face. There is no discrimination based on race or national origin, and therefore only rational basis review applies. CITE. According to the Chinese National Bureau of Statistics communique of May 11, 2021, the census showed 845,697 foreigners residing within the 31 provinces of mainland China. https://www.registrationchina.com/articles/how-many-foreigners-live-in-china/ In addition, the census showed that 419,517 of these persons were in China for purposes of "settlement." *Id.* According to the U.S. Census Bureau, there were 5.5 million Chinese people living in the U.S. in May 2024. https://www.census.gov/newsroom/facts-for-features/2024/asian-american-pacific-islander.html

SB 17 would bar any of the 845, 697 non-Chinese persons domiciled in China from buying land and it would not bar any of the 5.5 million Chinese persons domiciled in the U.S. from any land purchase or lease. The same is true of any of the other three designated countries. It is simply not true that SB 17 discriminates in any way based on ethnicity, race or national origin.

Texas' restrictions on real property transactions in SB 17 are a non-discriminatory and rational means of protecting its soil.

Because there is no discrimination in SB 17 based on race or national origin, the law is subject to rational basis scrutiny. *Golden Glow Tanning Salon, Inc. v. Columbus, Mississippi*, 52 F.4th 974, 979 (5th Cir. 2022). Under this test, the law will be upheld if there is a rational relationship between the disparate treatment and the state's legitimate governmental purpose. *Id.*

In Section one of SB 17, the legislature made very clear that its purpose was to protect Texas and its citizens from the governments of countries that have shown a demonstrated willingness to cause harm to them. The law the legislature passed prevents property ownership by those countries. This insures that those countries do not have a domestic foothold for furthering their destructive interests. Whether or not the law is overinclusive or underinclusive doesn't make any difference. It is rationally related to protecting the state and its residents from harm.

SB 17 is consistent with the state's police power and meets the rational basis test as shown above. In addition, as stated previously, the U.S. Supreme Court has long upheld restrictions on the purchase of land by aliens, *see, e.g.*, *Terrace*, 263 U.S. at 219–22; *Porterfield v. Webb*, 263 U.S. 225, 232–33 (1923); *Webb v. O'Brien*, 263 U.S. 313, 324–26 (1923); *Frick v. Webb*, 263 U.S. 326, 332–34 (1923), ruling that these restrictions are part of the police power reserved to the state when the Constitution was adopted. State restriction on land purchases by some aliens do not violate equal protection so long as they are not 'arbitrary or unreasonable. *Id* at 218, The Court has also dismissed as "frivolous" the contention that a "state statute forbidding the ownership of real property by aliens was repugnant to the Fourteenth Amendment." *Toop v. Ulysses Land Co.*, 237 U.S. 580, 582–83 (1915).

The original meaning of the Fourteenth Amendment and the modern "political function" doctrine also support dismissing this case. At the time of the ratification of the Fourteenth Amendment, state restrictions on alien land ownership were ubiquitous. *See Terrace*, 263 U.S. at 217.

Alternatively, "the State's broad power to define its political community" likewise justifies alien land restrictions under the "sovereign" or "political function" doctrine. *Cabell v. Chavez-Salido*, 454 U.S. 432, 438–40 (1982). That doctrine recognizes that the Equal Protection Clause does not "obliterate all the distinctions between citizens and aliens," because that would "depreciate the historic value of citizenship," which has long been tied to the ability to hold land. *Id.* at 439.

Texas has a long recognized right and power to pass laws such as SB 17. There is no evidence that Texas acted arbitrarily or capriciously in designating four countries as security threats and taking steps to prevent the governments of those countries from purchasing or leasing real property within the state. Texas has a rational basis for these restrictions as set out in Section 1 of SB 17 and there is no violation of Plaintiffs' right to equal protection of the laws.

**The three provisions of SB 17 that Plaintiffs challenge are severable, and they lack standing to challenge any other provisions.**

If the court finds that plaintiffs have standing to challenge the domicile and third-country domicile provisions of SB 17, they still lack standing to challenge any of its other prohibitions. *see* Tex. Prop. Code § 5.253(1)-(3), (4)(C)-(E). Plaintiffs have never argued that any other provisions of SB 17 applies to them, and "it is now beyond cavil that plaintiffs must establish standing for each and every provision they challenge." *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019). Plaintiffs' attempt to seek a writ of erasure against an entire statute because they allegedly have standing to challenge three provisions of it is improper. See Prayer for Relief on Complaint p. 28. (requesting the court to declare the entire statute unconstitutional and to enjoin its enforcement). And in any event, the three domicile provisions of SB 17 that Plaintiffs actually challenge are severable. "Whether unconstitutional provisions of a state statute are severable is of course a matter of state law." *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011). Under Texas's Code Construction Act, "if any statute contains a provision for severability, that provision prevails in interpreting that statute." Tex. Gov't Code § 311.032(a). SB 17 contains a severability clause stating that every "section, subsection, sentence, clause, phrase, or word" is severable. So even if the Court disagrees with all of the Attorney General's arguments above, the Court may not enjoin the enforcement of any provision of SB 17 beyond the two domicile provisions.

In any event, the Attorney General cannot enforce the criminal penalties contained in the statute because he is a member of the executive department and criminal law enforcement is a judicial function. *State v. Stephens*, 663 S.W.3d 45, 51-52 (Tex. Crim. App. 2021).

## CONCLUSION

Accordingly, the Court should dismiss Plaintiffs' Complaint and this action in its entirety and grant any other relief to which Defendants are entitled.

Date: October 21, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Keith Ingram*

BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
Keith.Ingram@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 463-2100

COUNSEL FOR THE STATE OF TEXAS

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on October 21, 2025, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

Zhanghua Lai
KERB LAW GROUP
13809 Research Blvd
Austin, TX 78750
512-203-2649 (no fax number)
ylai@kerblaw.com

Justin Sadowsky
SDTX 3713277
VA Bar 73382
CHINESE AMERICAN LEGAL DEFENSE
ALLIANCE
4250 N. Fairfax Drive #600
Arlington, VA 22203
646-785-9154 (no fax number)
justins@caldausa.org

Keliang (Clay) Zhu
CA Bar No 178170
Andre Y. Bates
CA Bar No 305509
CHINESE AMERICAN LEGAL DEFENSE
ALLIANCE
7901 Stoneridge Drive #208
Pleasanton, CA 94588
925-399-6702 (no fax number)
czhu@dehengsv.com
aybates@dehengsv.com

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel

21